The Crazy Horse policy of permitting a waitress to accept a drink is not the same thing as requiring the waitress to drink. There is not a shred of evidence in this record to show that consumption of alcohol was a requirement for Crazy Horse waitresses, and the court did not err by finding that Siegel's consumption of alcoholic beverages did not arise in the course and scope of her employment.
The evidence showed, without contradiction, that all waitresses who wished to accept an alcoholic beverage from a customer were required to obtain permission from Crazy Horse management. Siegel admitted she obtained permission before accepting an alcoholic beverage on the night she flipped her car while driving home. The majority fails to explain the inconsistency of making on-the-job drinking a requirement if one is forced to obtain permission before accepting a drink. If drinking alcoholic beverages were truly a requirement, no permission would have been necessary before a waitress could imbibe with the customers.
Siegel also failed to substantiate her claim the Crazy Horse encouraged or assisted employees to become intoxicated. See Appellant's Brief at 9. The evidence, viewed in a light most favorable to plaintiff Siegel, showed she admitted that she could refuse drinks from customers without obtaining permission from her employer permission was only required when she wanted to accept an alcoholic drink. She also admitted that she had the option of accepting non-alcoholic drinks. Finally, Siegel said that she sometimes accepted the drinks, but left them at another table without drinking them. These are not facts which would lead any reasonable trier of fact to conclude that drinking was a job requirement for Crazy Horse waitresses. Because there was no evidence to show that the Crazy Horse required its waitresses to consume alcoholic beverages as part of their job, Siegel failed to show that her injury arose in the course and scope of employment.
The majority's repeated assertion that the Crazy Horse profited exclusively from Siegel's consumption of alcohol is not entirely accurate. The Crazy Horse certainly benefited from the sale of any beverage, alcoholic or not, that it served to a customer. So Siegel's consumption of alcohol, as opposed to non-alcoholic beverages, is of no real consequence in terms of pecuniary benefit for the Crazy Horse. But it bears mentioning that Siegel herself probably benefited as well, for it would be reasonable to assume that the amount of money she made in tips was based on her customers' total bills. In other words, the more drinks she accepted, the higher the customers' total bar bills, and her tips, as a percentage of those bar bills, would correspondingly increase. She sometimes accepted these drinks without having any intention of drinking them, so the facts show that Siegel not only benefited herself, but she realized the benefit without being forced to consume the drink.
I also take exception to the majority's conclusion that the coming and going rule applies to this case. It reaches this conclusion by finding that the Crazy Horse's policy of permitting waitresses to drink alcoholic beverages while on the job created a special risk. Because drinking alcoholic beverages was not a job requirement, I would find the coming and going rule inapplicable in this case. Because I would affirm the summary judgment, I respectfully dissent.